## IRREGULARLY EXECUTED CONTRACTS FOR SEWERS.

[Franklin County Court of Common Pleas.]

### THE CITY OF COLUMBUS v. HENRY BOHL ET AL.

Decided, August 15, 1903.

*Sewers—Contracts for the Building of—Suit by Tax-payer to Enjoin—
Matters Which are Not Jurisdictional—Publication—Filing of
Plat—Main and Lateral Sewers Combined in One Contract—Im-
plied Powers of a Municipality—Public Necessity for Sustaining
a Contract—Laches—The Burns Law—Special Laws—How Long
Were Municipalities at Liberty to Act Under Them—After the
Announcement of the Supreme Court in June, 1902.*

1. In a suit to enjoin the carrying out of contracts entered into by a
   municipality for the construction of a system of sewers, ten
   days' notice in a newspaper of general circulation that the plans
   are on file for examination, failure to file a plat in the office
   of the city clerk, and the including in some contracts of both
   trunk and lateral sewers, are none of them jurisdictional matters.
2. Where the health and welfare of a city are involved in the carrying
   forward of a contract to completion, a court will sustain it under
   the implied powers which vest in municipalities, notwithstanding
   under the letter of the law the contract is invalid.
3. A tax-payer is guilty of laches, who stands by while an improvement
   of a serious character is undertaken and carried half through to
   completion, and then attempts to enjoin it at the peril of the
   public health and welfare.

4. A reasonable time for municipalities to adapt themselves to the changed conditions caused by the announcement of the Supreme Court in June, 1902, as to the illegality of special legislation, would probably be up to May 1, 1903, the date to which the Supreme Court suspended the effect of its decision as to the city of Cleveland.

5. While the various amendments to the Burns Law (Section 2702), enacted solely to graft unconstitutional exceptions upon the original act, are clearly void, yet a contract such as is involved in this case will be held valid, notwithstanding it falls under one of these exceptions, inasmuch as the Burns Law, even in its original form, should not be construed as a barrier to the execution of such a contract.

DILLON, J.

The petitions in these five cases are in substance alike. Commencing with August 4, 1902, the City Council of the City of Columbus passed two several ordinances providing for the issuing of $265,000 of bonds, and later, on January 12, 1903, passed another ordinance for the issuing of $175,000 of bonds, all for the purpose of constructing certain sewers in the city of Columbus, Ohio.

The ordinances declaring the necessity for these sewers and of the construction thereof were passed September 29, 1902, and also March 9, 1903.

Subsquently on January 27, 1903, the City of Columbus, after having advertised for bids, entered into certain contracts with certain firms and persons who are made defendants in the respective cases, for the construction of these sewers. I believe one of the contracts was made at a little later date, but that does not matter.

These suits are now instingued by the City of Columbus at the request of a tax-payer, asking that the said contracts and each of them be declared null and void, and that the officials of the City of Columbus be enjoined from recognizing the same or paying any money out by virtue of the same.

The cases are now submitted to me in chambers on a motion for a temporary restraining order.

I will first dispose of the minor causes, by virtue of which the plaintiff claims the contracts are illegal and void.

I find that the ten days' notice, which was not given in a newspaper of general circulation stating that the plans were on file in

the office of the board for examination, and the further fact that a plat was not filed in the office of the clerk of said city, and the further fact that some of the contracts embraced the construction both of main trunk sewers and of lateral sewers, are none of them jurisdictional. Indeed, I am well satisfied from the decisions, and I believe counsel will hardly contend that the court need devote any more consideration or assign any further reasons for this conclusion than are already expressed in the decisions cited.

The allegation that the several contracts were never awarded by the board of public works to said contractors, I find to be not true. This is merely a play upon words, and the fact is most apparent that said contracts were awarded.

I now come to the vital question in these cases. The admitted fact is that in all these proceedings, and in the awarding and signing of these various contracts, the City of Columbus acted under and pursuant to the act of April 30, 1891, Section 4 of which (Bates, 2705-6) specially exempts Columbus from the necessity of complying with Section 2702, more commonly known and designated as the "Burns Law." At least said special act exempted Columbus from complying with the said Burns Law in improvements of this kind.

The Burns Law is very clear and very explicit. It simply provides in brief that no contract involving the expenditure of money shall be entered into unless the auditor shall first certify that the money required for the contract is in the treasury to the credit of the fund from which it is to be drawn, and that where any contract is made without such certificate, it shall be absolutely void.

We are therefore confronted squarely with the question: Shall an injunction issue under all the facts and circumstances of this case?

I have concluded to refuse an injunction for three reasons, and I will assign them briefly:

The first reason which I present for refusing an injunction is the peculiar character and nature of the work—an improvement which is now but partially completed. These several contractors are all of them at work. The facts are that the City of Columbus has long since outgrown its old sewer system, the present sewers being constructed to carry off the refuse and filth when the city was probably not one-half its present size. The persistent agitation

of this whole sewer question, and the vital interest which has so long been manifested in the sewer problem, only serves to show to any practical mind the urgency of the existing situation. The health and welfare of the city are jeopardized. This is not the case of enjoining an ordinary improvement such as the building of a court-house, or the building of a memorial structure, or the construction of a market house, or the laying out of a boulevard. In one section of our city, at least, where these sewers are being constructed, the health of the people has for some time past been threatened, if indeed not already impaired. The work has been going on now for some time. The city has already paid these contractors on their work the sum of $48,718, and still retains about $5,000 belonging to the contractors. In some instances pumps are kept going day and night as a matter of absolute necessity. In other places there are tunnels being supported by temporary structures. In all, there are great excavations and temporary machinery and structures of all kinds, the withdrawal of which, the interference with which, and especially the delay incident thereto, it is only fair to say would be a public calamity.

I have no hesitancy therefore, and indeed I do not think any court would have any hesitancy, in recognizing at once the peculiar nature of this improvement and the urgency and peculiar necessity of the improvement. It will not do to answer this argument by saying that the municipality does not possess the power, by reason of these void contracts, to enforce their execution. I grant that argument as a general principle. But we must remember that a municipality necessarily possesses not only the powers specifically conferred upon it by law, and must act within the limitations of such powers, but a municipality also possesses such powers as are necessarily incident to or may fairly be implied from these powers and especially including all powers that are essential to its very existence. While the cases are extremely rare in which courts must announce this doctrine, yet the case at bar is one in which a court is fully justified in invoking it. Not even the Burns Law, therefore, can be so construed as to take away and utterly destroy this necessary power.

In other words, where, by reason of the misconduct, the ignorance or the error of the officials of a municipality, this city is placed in the midst of an improvement by reason of which a situation

of necessity and great urgency confronts it, it is too late for a tax-payer, or for the city itself, to enjoin the improvement.

The power to enact the Burns Law must come from Section 6 of Article XIII of the Constitution, which provides that—

"The General Assembly shall provide for the organization of cities and incorporated villages by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power."

It would be inconsistent, therefore, with the rights still remaining with the people in accordance with Section 20 of Article I, to so construe this Burns Law that, by reason of it, a municipality would be compelled to suffer in the midst of a partly performed contract, the nature of which is such as is presented in the case at bar.

I am not without some authority in this state in taking this position. In the Toledo Bridge case, decided some months ago by the Supreme Court of Ohio, which decision was announced by His Honor, Judge Davis, it will be remembered that after holding the act authorizing the construction of a bridge in Toledo to be void and unconstitutional, it was intimated that even though the bridge had not in any part been constructed, yet if a necessity for the bridge existed, it would not have been enjoined.

While I grant that there is no estoppel by reason of the fact that the parties have partly carried out this contract, and whatever might be the fate of one seeking by an action at law for a money judgment upon such a void contract, even after completion of the work as in the Lancaster case, 58 O. S., page 558, nevertheless we must remember that this is not a law case, but an equitable one, and in seeking equitable relief the plaintiff must not only show clean hands but must show diligence, and moreover is not relieved from presenting equities before he can have relief of this nature.

What are the facts in this case? Let us take into consideration the nature of this improvement which I have before mentioned, the present state of the improvement, the knowledge of the City of Columbus, and of its tax-payers of such contemplated improvement, the condition of the city in case these improvements should now be abandoned and all the machinery be withdrawn, the effects upon the public health and welfare if enjoined. Let us moreover

reflect as to what will be gained, and especially as to what will be lost by such a course. Let us remember the time when such an action might have been begun and the proper time to do it. Let us further remember that the spirit of the law in this case has been fully satisfied, that the contracts themselves are just and indeed favorable to the city, and that not only would there be a great damage to the public health but also a financial damage, and we will readily see that the equities of the case are not strong, and that the plaintiff must rely solely upon the law and upon the doctrine that equity will follow the law.

I quote with approval from the decision of Judge Wright, in the case of *Ampt* v. *The City of Cincinnati,* in which this same act was pleaded. This will be found in the 34th Bulletin, pages 111 and 112. He says that "a court of equity remains passive until a case of equity is presented which, under the rules of equity jurisprudence, calls the power of the court into activity." And further that "the bare fact that a partly executed contract with a municipal corporation is void under the letter of the law, is not of necessity a ground for restraining further action under such contract." And further that "if the law authorizes a municipal corporation to contract, and if such contract is in good faith made and is partly executed, a vast expense incurred by the contractor in preparing to complete it, when the municipal authorities in good faith desire to continue it, when the current revenues are sufficient to meet the current demands, where it is to the financial interest of the public and of the tax-paying citizens that it should continue, a court of equity will not, at the suit of a tax-payer enjoin such contract until such equities are presented as demand it, although the contract be conceded to be void," both for want of the auditor's certificate and because it was in violation of the law. Therefore in that case an injunction was refused, not because a municipal corporation can not be estopped, but because the plaintiff has not presented a case which calls the power of a court of equity into activity.

I distinguish, therefore, between the tax-payer or city who stands by and permits an improvement to go on which is of no serious nature, and who would be permitted to secure an injunction against the further carrying out of the same, and the same tax-payer who stands by when an improvement of the character

and nature of the present improvement is being made, and then in the midst thereof, at the very peril of public health and public welfare, would seek to enjoin the completion of the work. In the latter case, I should hold such person guilty of laches.

The third reason which I assign for refusing an injunction in this case is because of the law itself.

I am of opinion, and I am well satisfied that the various amendments of the original section (2702), as these amendments were made first in 79 O. L., page 54, then in 80 O. L., page 178, and then again in 86 O. L., page 391, which amendments excepted Cleveland from its operation, had this effect: that as each one of these repealing clauses were enacted solely to graft upon the original act an unconstitutional exception, the repealing clauses were by a well-settled rule of interpretation likewise void, leaving Section 2702 as it stood in the Revised Statutes of 1880. *State v. Buckley,* 60 O. S., 273.

But at the time of these transactions we had upon our statute books what is now admitted to be the unconstitutional act of April 30, 1891, Section 4 of which (Bates, 2705-6) excepts Columbus from the necessity of complying with said Burns Law, and under former adjudications such exceptions being valid, it was acted upon for many years by this city and was acted upon in this case.

The Supreme Court's decisions in the Toledo and Cleveland cases which wrought the revolution in this state and reversed the old interpretation of these special statutes, were announced in June, 1902, being about two months before these proceedings were commenced by the first ordinances, and several months before the latter ordinances were passed.

Remembering Judge Minshall's dictum in the case of *Cincinnali v. Holmes,* 56 O. S., 104, which we find on page 113, to the effect that the Burns Law applies not at the end of the proceeding, when the contract is let, but at the beginning when the ordinance is passed ordering the improvement, the question arises squarely, Was the city justified, in view of these decisions, in continuing to act upon and under the special enactment? It will be readily granted that prior to these decisions of the Supreme Court no question whatever could arise that any acts of the city under this special enactment would not have been upheld, even though they were

now for the first time before the court for adjudication, and the reason is very clear. For almost fifty years this character of legislation was upheld and sustained, and therefore the Supreme Court has very wisely refused to declare void any bonds issued or contracts entered into under such acts prior to their decision in the Toledo and Cleveland cases. And it will be granted that within a very short time after these decisions municipalities might still act under special laws. The question really in this case is, What was a reasonable time? In other words, How long after these decisions in the Toledo and Cleveland cases should a court permit municipalities to act under unconstitutional statutes, in view of the fact that they had been permitted so to do for a period of almost fifty years?

The state of Ohio was confronted with a very peculiar situation; indeed a most unusual situation. The Supreme Court itself seems to have given us some light on this matter. In a Columbus case, it enjoined the issuing of bonds for purposes which were not necessary and urgent, but refused to enjoin the issuing of bonds under a void act for a purpose which seemed to be necessary. In the case of the City of Cleveland itself, for many months after it had declared the act to be absolutely void, the court nevertheless permitted certain improvements to be made, to-wit, the laying of streets, under that void act.

It would seem that the court would answer the question, therefore, as to what time was necessary and reasonable to this effect: that such improvements as were necessary might continue under special acts up to May 1, 1903. I admit the uncertainty of this position, but it must be remembered that in any event, before this court could grant a temporary injunction, the opposite view must be clear and certain—a conclusion I can not reach.

In other words, it is by no means certain and clear to my mind that the Supreme Court would declare the act of the city officials in this case to have been unwarranted and without power by reason of the unconstitutionality of the special act, and unless it is clear and certain, by the well-established principles of law, a temporary injunction can not issue.

*J. M. Butler* and *George S. Marshall,* for plaintiff.
*Paul Jones* and *L. G. Addison,* for defendant.